**KYLE R. KNAPP**
**Attorney at Law**
California State Bar No. 166597
916 2nd Street, 2nd Floor
Sacramento, CA 95814
Telephone:(916) 441-4717

Attorney for SERGEY TKACHUK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 16-CR-00242-KJM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | DEFENDANT'S SENTENCING MEMORANDUM |
| v. | ) | |
| | ) | DATE: July 12, 2021 |
| | ) | Time: 9:00 am |
| SERGEY TKACHUK, | ) | COURT: Hon. Kimberly J. Mueller |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

TO: PHILLIP A. TALBERT, ACTING UNITED STATES ATTORNEY; PAUL HEMESATH, ASSISTANT UNITED STATES ATTORNEY; AND JANICE SLUSARENKO, UNITED STATES PROBATION OFFICER.

The defendant, Sergey Tkachuk, by and through his attorney, Kyle Knapp, hereby submits the following Sentencing Memorandum to bolster the argument that he should receive a sentence of time served in this matter. The § 3553(a) [1] factors, the acceptance reduction and the § 5K2.1 analysis, respectfully leave him in a posture where he should be considered a level 15/III.

---

[1] § 3553. Imposition of a sentence
**(a) Factors to be considered in imposing a sentence.** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
**(2)** the need for the sentence imposed—
**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
**(B)** to afford adequate deterrence to criminal conduct;
**(C)** to protect the public from further crimes of the defendant; and
**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
**(3)** the kinds of sentences available;

## A. PERSONAL BACKGROUND & § 3553(a) ANALYSIS

A) Nature and Circumstances of the Offense

Sergey Tkachuk sold pills that he believed to be Norcos to Mr. Berry. As the probation report narrates, Mr. Berry tragically took the pills on two different occasions. After the first he was revived and left the hospital against medical advice. On the second occasion, he took his own life and could not be saved. We are not litigating Burrage [2] "but for" level causation on the responsibility for the death and it was not part of the plea here. Sergey Tkachuk has taken responsibility for what he did with respect to his sales of pills to his friend. He has to live with his actions and at his core knows he bears some responsibility because he provided some of the pills Mr. Berry took that night. That is a fundamentally different analysis than whether the death could be proved up beyond a reasonable doubt. It is tragically correct, as probation points out that Mr. Berry knew the pills he took after his discharge could kill him.

Most importantly, Sergey Tkachuk did not know the pills he sold contained Fentanyl until his co-defendant gave him a heads-up as detailed in paragraph 15 of the probation report, and after contact with the DEA agents.

B) History and Characteristics of the Defendant

Mr. Tkachuk endured a tumultuous childhood that was marked by abuse at the hands of both of his parents. (PSR 57). He suffers from chronic back pain and often self-medicated with Norcos and Alcohol. Admittedly, he struggles with personal demons and needs to work on his impulse control and relationship issues. He has never fully addressed or engaged in the counselling that he so desperately needs. His criminal history is solely in the misdemeanor category and has, prior to this case, been due to his behavior in relationships. This is compounded by his alcohol and drug problems. He remained in a relationship with his girlfriend for some time despite their problems. She supported him even though they could not be together should he be released. (Docket #81, Ex. A). Mr. Tkachuk stopped all communication with her well over six months ago.

It is admitted that distribution of Fentanyl is a serious problem as is distribution of drugs. However, Mr. Tkachuk has waited in custody for quite some time for his case to resolve and at the time of sentencing

---

**(4)** the kinds of sentence and the sentencing range established for.......

18 USCS § 3553
2 Burrage v. United States, 571 U.S. 204

will have done twenty-two months actual time. He is a trustee on the 8th floor at the jail. He cooperated and has pledged to continue to do so. All of this is superimposed upon a backdrop of the fact that he did not know the pills he sold contained Fentanyl.

This case and investigation began in 2016 when it was early in the outbreak of Fentanyl counterfeit pills. People now are on notice and indeed some are seeking pills with Fentanyl in them. However, Mr. Tkachuk was not dealing heroin, he thought the pills were Norcos.

C) The Need for the Sentence Imposed-to reflect the seriousness of the Offense, Promote Respect, Punish, Deter and Protect the Public

The way to protect the public from future crimes of Mr. Tkachuk are to afford him drug and alcohol counselling, testing and intensive therapy for domestic violence and his personal demons left over from childhood.

That would be much better done out of custody, rather than inside.

In this case after the early shock of his friend's death struck him, when contacted he went down a path to attempt to make amends and own the situation. He was initially afraid of getting twenty years and was scared out of his wits when he first was confronted by DEA agents. After that initial encounter however, he has cooperated fully.

Neither probation, nor I as his attorney, understood the degree to which Mr. Tkachuk was struggling in life and with his girlfriend while he was on pretrial release. When things came to light in September of 2019, it was counsel's position then and it continues to be the position now, that Mr. Tkachuk needs counselling and serious help to slay the demons that have beset him.

He needs to learn that the parental modeling he has had is not the way to approach relationship or life problems. He needs to understand that numbing his physical and mental pain with drugs and alcohol is not a solution. He has done all he can during the pandemic to work on himself, while in custody but it has all been of the self-help variety. For a year or so, there were no programs offered to inmates and things are only just now beginning to normalize. Two bail motions run in this case, the last sought to allow Mr. Tkachuk to re-locate to Idaho and connect him with services that tracked Better Choices and domestic violence counselling. Pre-trial again took the position that there were no combination of conditions by which he was safely released. As a result, he stayed in custody throughout the pandemic and it has been a tough road. He did perhaps the most difficult county jail time any inmate could do. Few visits, no

programming or services was offered to him and will not be offered to him while at the County Jail. Probation also noted that Sergey Tkachuk has mental health issues and was troubled by suicidal ideation issues. (PSR 5)

The reality of this is that Mr. Tkachuk will have to move out of the area and seeks a fresh start with his sister in Idaho so that he can remove himself from the dynamics that have led him to this point in his life.

D) THE ANALYSIS BY PROBATION ON USSG 5K2.1 IS CORRECT[3]

There is no evidence that Mr. Tkachuk knowingly risked anyone's life. He did not know the pills he sold contained Fentanyl. He provided some pills believed to be Norcos at Mr. Berry's request. The critical language in this section is the "means by which life was taken.: The dynamics here reflect that Mr. Berry took his own life after his overdose experience the night prior. He was discharged from the hospital against medical advice. He had multiple drugs in his system. Mr. Tkachuk did not take his life or cause it to be taken. Mr. Berry knew more about the nature of the drugs he had than Sergey Tkachuk. He took several pills and overdosed horribly. He was saved by Narcan and a visit to the hospital. He then took the pills again. As Sergey Tkachuk was unaware of the nature of the pills, he should not receive an enhancement because of 5K2.1.

Also, this is not a heroin case whereby sales of that substance based on purity and amount carries incumbent risk. Norcos that are not adulterated are not nearly as dangerous to use or sell. This is not argued to pin a star on Mr. Tkachuk and nothing about this argument diminishes the tragedy that a young man died. But it was not a result of the sale of the pills, it was the result of a troubled young man's decision.

He also had no idea that Mr. Berry wished to end his life, nor did he know the pills he got contained

---

[3] § 5K2.1. Death (Policy Statement)
If death resulted, the court may increase the sentence above the authorized guideline range.
Loss of life does not automatically suggest a sentence at or near the statutory maximum. The sentencing judge must give consideration to matters that would normally distinguish among levels of homicide, such as the defendant's state of mind and the degree of planning or preparation. Other appropriate factors are whether multiple deaths resulted, and the means by which life was taken. The extent of the increase should depend on the dangerousness of the defendant's conduct, the extent to which death or serious injury was intended or knowingly risked, and the extent to which the offense level for the offense of conviction, as determined by the other Chapter Two guidelines, already reflects the risk of personal injury. For example, a substantial increase may be appropriate if the death was intended or knowingly risked or if the underlying offense was one for which base offense levels do not reflect an allowance for the risk of personal injury, such as fraud.

18 USCS Appx § 5K2.1

Fentanyl. As stated in my Formal Objections, he cooperated not only in the days after he was first confronted by DEA agents but by testifying before the Grand Jury. He also will face public scrutiny at the jail and in prison as one of the terms of his plea is that his cooperation become public knowledge. Because of this further incarceration will be fraught with peril.

E) THIS IS AKIN TO A STATE INVOLUNTARY MANSLAUGHTER PROSECUTION

The suicide dynamics in this case makes it unlikely that a state level homicide prosecution could lie. The only conceivable level of homicide that could possibly be prosecuted on a state level would be a no intent homicide - involuntary manslaughter. The potential maximum punishment for involuntary manslaughter would be four years (It is a 2,3,4 triad). It is not punishable as a strike – a violent or serious felony - which means that it is a half time credits case. The practical result is that the most time that could be done if you have a background like Mr. Tkachuk's would be two years actual time. There is no argument to be made that it could have been prosecuted as a federal level involuntary manslaughter as there is no jurisdiction.

F) MR. TKACHUK SHOULD RECEIVE THE ACCEPTANCE REDUCTION

We stand upon our formal objections filed in this matter and they will not be restated in full here (Docket 118). Mr. Tkachuk's expressions of remorse both to probation, his cooperation and his conduct while incarcerated put him firmly within the guideline range for acceptance. To view only the criminal conduct factor in isolation to the exclusion of the larger picture or other factor would be incorrect. This is against the backdrop of the plea agreement, the specter of past and continued cooperation and the vast majority of my client's conduct in the years since the commission of this crime. My client should get the three-level reduction as contemplated in the plea agreement. He will affirm the factual basis and address the court with respect to his contrition at sentencing.

CONCLUSION

Sergey Tkachuk has been punished sufficiently by the Covid-19 time that he has done. He has had no services that would help him with his prior criminality or his drug program. It will be argued that five years in light of the death of Mr. Berry would be appropriate. That is much longer than necessary to deter, punish or promote respect for the criminal justice system. Mr. Tkachuk did not know he sold pills with Fentanyl in them. He had no intent to kill his friend and indeed the exact opposite is true. This is not akin to a sales of heroin case.

It also will not help him by warehousing him for several more years in federal prison. The psychological help he needs should be done one on one on the outside. He needs to remove himself from elements of his past and start anew. Federal prison will not serve that end, nor will it bring back Mr. Berry.

A time served sentence with a protracted period of supervised release with intensive counseling would be justice in this matter. Respectfully, a fresh start in Idaho with his sister would work that result and the federal system and probation where she lives is robust and efficient.

Dated: July 6, 2021                             Respectfully submitted.


   /s/ Kyle R. Knapp
Kyle R. Knapp
Attorney for Defendant Sergey Tkachuk